

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| LARRY JAMES MCGEE, | § | |
| Petitioner, | § | |
| v. | § | 2:13-CV-0208 |
| WILLIAM STEPHENS, Director, Texas Department of Criminal Justice, Correctional Institutions Division, | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS

Came for consideration the Petition for a Writ of Habeas Corpus filed by petitioner LARRY JAMES MCGEE challenging his February 13, 2008 conviction for the third-degree felony offense of Possession of Marijuana out of the 100th Judicial District Court of Carson County, Texas, enhanced by prior felony convictions, and the resultant 25-year sentence. *See State v. McGee*, No. 3611. The undersigned United States Magistrate Judge recommends petitioner's habeas application be DENIED.

### I.
### PROCEDURAL HISTORY

According to the opinion of the Amarillo Court of Appeals for the Seventh District of Texas, the following evidence was adduced at petitioner's trial:

> On December 5, 2005, Texas Department of Public Safety Trooper Michael Smith was patrolling Carson County when he stopped a Mercury SUV for speeding and a seatbelt violation by the driver. Jessie Moore, Jr. was driving the SUV and

> Appellant was a passenger. Although Moore indicated the SUV was a rental vehicle, neither Moore nor Appellant could produce a rental agreement.
>
> Trooper Smith asked for, and received, consent from Moore to search the SUV. As he conducted his search, he noticed a very strong odor of marihuana emanating from the SUV's interior that was overwhelming. He found a black bag containing marihuana in the back seat and four other bundles underneath the SUV's seats. The combined weight of the bundles was seven pounds. He also found user amounts on Moore and Appellant. Appellant had a small package of marihuana in his shoe. In total, there was 7.64 pounds of marihuana recovered from the SUV, Moore, and Appellant.
>
> During the traffic stop, Moore and Appellant gave inconsistent descriptions of their trip to Las Vegas, *i.e.,* their stories varied in their times of departure and the days actually spent in the city. In addition, although Appellant told Trooper Smith that Moore was a family friend, he could not recall Moore's last name. Finally, Moore indicated that only he knew about the seven pounds of marihuana and Appellant denied knowing that the seven pounds of marihuana was present in the SUV.

*McGee v. State*, No. 07-08-211-CR (Tex. App. – Amarillo, March 6, 2009).

Subsequently, petitioner was indicted for the intentional and knowing possession of a usable quantity of marihuana in an amount of fifty pounds or less but more than five pounds. Clerk's Record at 6.[1] The indictment contained two enhancement paragraphs alleging petitioner had previously been convicted of the following felony offenses:

| | |
|---|---|
| Rape | February 4, 1981 |
| Cause No. 80 C 5207 | Circuit Court of Cook County, Illinois |
| | |
| Aggregated Battery | May 25, 1989 |
| Cause No. 88 CR 17670 | Circuit Court of Cook County, Illinois |

CR 6. Petitioner pled not guilty, and the case was tried to a jury. The jury found petitioner guilty. Punishment was enhanced by the two prior felony convictions, and the jury assessed a sentence of 25 years. The judgment was affirmed on appeal. *McGee v. State*, 2009 WL 578637, No. 07-08-

---

[1] Any further reference to the Clerk's Record will be cited as CR followed by the page number(s).

0211-CR (Tex. App. – Amarillo, March 6, 2009). Petitioner filed a state habeas corpus application in *Ex parte McGee*, No. WR-74,805-01 on October 12, 2010. The Texas Court of Criminal Appeals granted relief in the form of the opportunity to file an out-of-time petition for discretionary review. The petition for discretionary review which was filed was subsequently refused. *In re McGee*, PD-1763-12 (Tex. Crim. App. February 6, 2013). Petitioner filed another state habeas corpus application on June 24, 2013. The state habeas corpus application was denied without written order on August 28, 2013. *Ex parte McGee*, No. WR-74,805-02 (Tex. Crim. App. August 28, 2013).

## II.
## PETITIONER'S ALLEGATIONS

Petitioner contends he is confined in violation of the Constitution and laws of the United States for the following reasons:

1. Petitioner's trial counsel was ineffective for failing to:
   a. object to the playing of an unedited video referencing petitioner's prior criminal record, and
   b. enter into evidence a sworn affidavit of petitioner's co-defendant;

2. The prosecutor committed prosecutorial error by:
   a. referencing petitioner's prior criminal record, and
   b. offering testimony and evidence about a shoe finding;

3. The trial court judge erred in that he:
   a. failed to secure an out-of-state witness, and
   b. allowed the prosecutor to introduce petitioner's prior criminal record during the guilt-innocense phase of the trial; and

4. Petitioner was denied an impartial jury.

## III.
## STANDARD OF REVIEW

In his answer, respondent fully and accurately sets out the appropriate legal doctrines,

statutory authority, and case law regarding the standard of review this Court must utilize including the required presumptions this Court must make in its review. (Dkt. 23 at 5-10). These standards and supporting authority are applicable to this case and need not be repeated.

## IV.
## MERITS

### *Ineffective Assistance of Counsel*

Petitioner initially contends he was denied effective assistance of counsel at trial because counsel did not:

1. object to the playing of an unedited video referencing petitioner's prior criminal record, and

2. enter into evidence a sworn affidavit of petitioner's co-defendant Jesse Moore, Jr.

This ineffective assistance of counsel claim was adjudicated on the merits in the state habeas corpus proceeding. In Texas writ jurisprudence, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits. *Singleton v. Johnson*, 178 F.3d 381 at 384 (5th Cir. 1999). Such an adjudication is entitled to a presumption of correctness and the denial of relief based on a factual determination will not be overturned unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Hill*, 210 F.3d at 485.

Additionally, the proper standard for reviewing a claim of ineffective assistance of counsel is enunciated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674

(1984). Under the two-pronged *Strickland* standard, a petitioner must show defense counsel's performance was both deficient and prejudicial. *Id.* at 687. An attorney's performance was deficient if the attorney made errors so serious the attorney was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution. *Id.* That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession. A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689. Strategic choices made after a thorough investigation of both the law and facts are "virtually unchallengeable." *Id.* at 690-91. This is a heavy burden which requires a "substantial," and not just a "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011); *see also Cullen v. Pinholster*, 131 S. Ct. at 1403.

Petitioner must also show counsel's deficient performance prejudiced the defense. To establish this prong, petitioner must show counsel's errors were so serious as to deprive petitioner of a fair trial. *Strickland*, 466 U.S. at 687. Specifically, to prove prejudice, petitioner must show "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 844, 122 L. Ed. 2d 180 (1993). A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88 n. 4. (5th Cir.1993). If a petitioner fails to show either the

deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Strickland,* 466 U.S. at 697. When a state prisoner asks a federal court to set aside a conviction or sentence due to ineffective assistance of counsel, the federal court is required to use the "doubly deferential" standard of review that credits any reasonable state court finding of fact or conclusion of law and which presumes defense counsel's performance fell within the bounds of reasonableness. *Burt v. Titlow,* 134 S. Ct. 10, 13, 187 L. Ed. 2d 348 (2013).

Petitioner's first argument appears to be a claim that trial counsel, Mr. Bailey, was ineffective because he failed to object to the playing of an unedited video referencing petitioner's prior criminal record. Petitioner cites the Reporter's Record at page 137, lines 19-25 and page 138, lines 8-25 to support his claim.[2] It is noted that trial counsel objected to a one-minute portion of the video being played for the jury and such objection was sustained by the trial court. RR 122 - 123. The portion of the record cited by petitioner shows the following exchange:

> Mr. Messer: Your Honor, at this time I would ask that we be allowed to publish the videotape to the Jury.
>
> The Court: Any Objection?
>
> Mr. Bailey: No objection.
>
> The Court: Except that part that's already been - -
>
> ...
>
> Mr. Messer: Your Honor, once I've started playing this, if you could ask the jurors - - I would ask that the Court ask the jurors if they can hear. If they can't, then I will ...
>
> The Court: Okay. Are you hearing that?

---

[2] Any further reference to the Reporter's Record will be cited as RR followed by the page number(s). In the record it shows Mr. Bailey was petitioner's trial counsel and the prosecutor for the State was Mr. Messer.

> Juror: Turn it up just a little bit.
> Juror: I'm not.
>
> (*First portion of State's Exhibit 1 was played in open court*)
>
> Mr. Bailey: The numbers on mine don't match yours.
>
> (*Sound was muted by Mr. Bailey and then sound resumed as video continued to play in open court*).
>
> Mr. Messer: Your Honor, that's all of the videotape that we plan on playing at this time, Your Honor.
>
> The Court: All right.

RR 137-38. Nothing in this portion of the trial record supports petitioner's claim. Instead, the record shows a portion of the video at issue was played and a portion within that portion was muted, apparently in order to comply with the trial court's order sustaining petitioner's trial counsel's motion.

Petitioner next contends he informed trial counsel, Mr. Bailey, an error occurred when another part of the video referencing petitioner's prior criminal record was played. Petitioner cites the record at pages 176-77 in support and to show counsel attempted to correct an uncorrectable error. In this portion of the record Mr. Bailey states:

> Mr. Bailey: Your Honor, very briefly the only issue, really, is when we were listening to the tape, I realized that at some point in time there were two points where McGee's criminal record was coming on the tape. The first one I got a little late behind getting it. The other one that was at the 1616 mark. The other one, Your Honor, was also at the 1449 mark, and it ran to about the 1550 mark. I would also ask that that be stricken, as far as the tape is concerned. Everything beyond that, Your Honor, we have no objection to. It's only the criminal record of Mr. McGee is the reason we're asking that that be muted out for the Jury.

RR 176. The trial court overruled the objection. However, the next morning, the following

exchange occurred:

> Mr. Bailey:   Your Honor, if I may, I would like to reiterate my objection again as I did yesterday regarding the portion of the tape that I missed in which Mr. McGee's criminal record came in. Your Honor, I acknowledge the fact that I made an error when I did that by not catching that timely, but the Jury did not hear it whenever they heard the tape yesterday, and this error could be corrected today if the Court will allow me to go ahead and seal off an extra minute, because basically it's irrelevant for this part of the trial and shouldn't be brought in, and therefore I'm asking the Court once again to reconsider the matter.
>
> The Court:   Be glad to, but how do we do it? Haven't they already heard that?
>
> Defendant:   Yeah.
>
> Mr. Bailey:   No, sir. This is what was stopped yesterday, Your Honor, before we got into it. That was marker 1549, that's the one I missed. I'll be honest with you, I did miss it.
>
> The Court:   All right.

RR 183-184. Petitioner appears to claim that counsel missed a part of the video referencing his prior criminal record which was in addition to the portion of the tape already ruled upon by the trial court and which was muted in front of the jury. Petitioner does not argue that counsel failed to object to this additional portion of the video being played, and clearly the record shows otherwise. Instead, petitioner sets his focus on the inconsistent video reference times cited by his trial counsel. As evident from the exchange quoted above, counsel references both the 1449 and 1549 video time marks when arguing that the additional one minute portion should be muted in front of the jury. There does seem to be an inconsistency, but for the reasons set out below it is not critical. Further review of the record shows that when asked by the court reporter to clarify Mr. Bailey states:

> Mr. Bailey:   Marker time on it is 16 minutes, 16 seconds, 0 seconds - - 16 hours, I'm sorry, 16 minutes, 0 seconds to the 16 hours, 17 minutes, 0 seconds is what we've already agreed to. The other portion of the tape which has that very same information on it from the dispatcher started 1549.0 seconds to 1550

> and 0 seconds. They did not hear it yesterday, and so therefore, they won't hear it today, unless the Court allows it to go ahead and come on in. So it's not as if they've heard it now, and I'm trying to take something back. They never heard it in the first place.

RR 185. The objection was sustained. RR 186.

The initial reference to the 1449 marker was either a misstatement by trial counsel or a typographical error by the court reporter. Mr. Bailey requested the court to allow him to, "go ahead and seal off an extra minute." RR 183. Under petitioner's interpretation, trial counsel's initial reference to the marker running from 1449 to about 1550 would actually be a reference to a one hour and one minute portion of the tape. RR 176. This runs contrary to the expressed intent of trial counsel to mute an additional minute referencing petitioner's criminal record. Not only has petitioner failed to show trial counsel's actions amounted to ineffective assistance, he has failed to show his prior criminal record was presented to or talked about in front of the jury.

Consequently, and assuming *arguendo* that trial counsel did reference the wrong portion of the video while arguing his objection to keep it from the jury, petitioner has failed to show how he was prejudiced. Petitioner has failed to show a portion of the video containing any reference to his prior criminal record was played in front of the jury and that such information led to his conviction. Petitioner was convicted of being in possession of marijuana. The jury heard testimony from Mike Smith, a state trooper in the Highway Patrol division of the Texas Department of Public Safety, who found approximately seven pounds of marijuana in a vehicle in which petitioner was a passenger. RR 126-151 and RR 162-171. The jury found that testimony to be credible and convicted petitioner of the possession offense. Petitioner has failed to show he was prejudiced by counsel's alleged ineffectiveness.

Additionally, and as set forth above, petitioner's ineffective assistance of counsel claim was

adjudicated on the merits in the state habeas corpus proceeding. A determination of a factual issue made by a state court shall be presumed to be correct. Therefore, to succeed in this federal habeas application, petitioner has the burden to rebut the presumption of correctness by clear and convincing evidence. Petitioner has failed to do so and for these reasons his claim should be denied.

Petitioner next argues he received ineffective assistance of trial counsel because counsel failed to offer into evidence a sworn affidavit drafted by petitioner's co-defendant Jesse Moore, Jr. In the affidavit, co-defendant Moore states, "I...was solely responsible for the possession of marijuana that was found in my vehicle." CR 47. This affidavit of Mr. Moore was not presented to the jury or introduced into evidence at trial, but it was submitted to the trial court in the form of a Motion to Dismiss. The motion was considered in a pre-trial hearing.[3] At this pre-trial hearing, petitioner and trial counsel had the following exchange:

> Q: In regard to the affidavit from Mr. - - or excuse me, the co-defendant in this case, Mr. Moore, this is something you wanted me to file; is this correct?
>
> A: Yes, sir.
>
> Q: And you and I had several discussions regarding the fact that I didn't think it was proper; is that not true?
>
> A: True.
>
> Q: Okay. And even though Mr. Moore pled guilty to this charge, I didn't think it was the proper thing to do; is that correct?
>
> A: True.
>
> Q: And you wanted me to file it on your behalf, which today I did; is this correct?
>
> A: True.

---

[3] At the same pre-trial hearing, the trial court also considered trial counsel's motion to withdraw which was denied. RR 15-17, CR 49-50 and 53.

...

> Q:   And it's my understanding that you chose, because we were - - I filed the motion to have Mr. Moore brought back to Texas; is that correct?
>
> A:   True.
>
> Q:   And you weren't too crazy about that; is that right?
>
> A:   Without my recommendation.

RR 13-15. Petitioner has failed to rebut the presumption of correctness afforded the denial of his state court habeas application and he has not shown how counsel was ineffective. Petitioner's co-defendant, Mr. Moore, did not testify at trial because petitioner did not want him there. Petitioner cites to Rule 902(8) of the Texas Code of Criminal Procedure to argue that Mr. Moore's affidavit comports with the requirements of the rule. However, based upon the language of the rule he cites, it appears petitioner intended to cite to Rule 902(8) of the Texas Rules of Evidence which relates to Evidence That Is Self-Authenticating including Acknowledged Documents. As argued by respondent, even if the rule applied and the trial court found Mr. Moore's affidavit to be self-authenticating, petitioner has still failed to demonstrate the affidavit was admissible. Petitioner also cites Rule 21.7 of the Texas Rules of Appellate Procedure which sets out the types of evidence allowed at a hearing on a motion for new trial. That rule, however, is inapplicable to petitioner's case.

Finally, petitioner has failed to show how he was prejudiced by trial counsel's actions since the inculpatory statement by co-defendant Moore was heard by the jury. At petitioner's trial, his counsel cross-examined the state's witness Department of Public Safety Trooper Michael Smith. Trooper Smith testified, after listening to the audio portion of a video tape made the day of the

arrest, that he believed petitioner's co-defendant Mr. Moore acknowledged he was the only one who knew about the marijuana in the car. RR 147. When asked whether it was petitioner who stated on the video that he did not know the drugs were there, the trooper said he thought that's what he [petitioner McGee] said. RR 147. Additionally, trial counsel called Mr. Todd Alvey as a witness. RR 172. Mr. Alvey testified Mr. Moore, petitioner's co-defendant in this case, was his client and that Mr. Moore pled guilty to possession of marijuana. RR173. Petitioner was able to put before the jury testimony attributing the drugs to co-defendant Moore and it was up to the jury to weigh the credibility of the witnesses before it. As stated by the Seventh Court of Appeals, "Moore and Appellant [petitioner McGee] stated Appellant knew nothing of the seven pounds of marihuana in the SUV. Generally, a jury is the sole judge of the credibility and demeanor of witnesses as well as the weight to be given to testimony and we are required to afford 'due deference' to the jury's determinations. Here, it was within the jury's province to disbelieve videotaped statements by Moore and Appellant." *McGee v. State*, No. 07-08-0211-CR, 2009 WL 578637, at *3 (Tex. App. Mar. 6, 2009)(internal citations omitted).

Petitioner has failed to prove prejudice. The admission of Mr. Moore's affidavit to support a defensive theory that Mr. Moore was the sole possessor of the drugs and that petitioner had no knowledge of its presence in the car would have been cumulative of the testimony outlined above. Petitioner's claim should be denied.

### *Prosecutorial Misconduct*

Petitioner next alleges the prosecutor violated a trial court order for the prosecution to not read or allude to petitioner's prior criminal record, "during the presentation of an unedited video." (Dkt. 2 at 4). Petitioner references the trial record at page 138, lines 8-11 in support of his argument

that the prosecutor addressed the trial court, and presumably violated the court's order, prior to introducing and playing the video tape. *Id.* A review of that portion of the record shows Mr. Messer stated, "Your Honor, once I've started playing this [videotape], if you could ask the jurors - - I would ask that the Court ask the jurors if they can hear. If they can't, then I will ..." RR 138. As stated by respondent, Mr. Messer made no reference to petitioner's prior criminal record when addressing the trial court in front of the jury. Instead, the prosecution appears to simply request the trial court ensure the jury can hear the videotape. A review of the entire trial court record does not substantiate petitioner's argument and the Court has not found any reference to petitioner's prior criminal record. Petitioner has failed to show he is entitled to relief on this issue and his claim fails.

Petitioner next argues the prosecution erred because, "Mr. Messer offered testimony and evidence of an alleged shoe finding during trial." (Dkt. 2 at 4). Petitioner appears to allege this constituted misconduct because the indictment contained no such finding and he was not charged with this finding. *Id.* It appears the "finding" petitioner references was the small amount of marijuana the trooper found in petitioner's shoe. When questioned by the prosecution, the trooper testified it was his practice to ask defendants whether they had contraband on their person prior to arriving at the jail because any contraband found while being processed into jail could lead to an additional drug possession charge. RR 134. The trooper testified he told petitioner if he was honest, any contraband would be, "rolled into the weight of the initial charge." *Id.* In this case, petitioner told the trooper about the marijuana in his shoe and the trooper found and retrieved the marijuana. *Id.* Petitioner was not indicted on a separate charge for the marijuana in his shoe and he has failed to demonstrate how this testimony was inadmissible or how it constituted prosecutorial

misconduct.[4] Petitioner's claim should be denied.

### *Violation of Due Process and Trial Court Error*

Petitioner argues the trial court violated his due process rights. Petitioner states,

"'MOTION TO SECURE A MATERIAL AND NECESSARY OUT-OF-STATE WITNESS' was violated under the (Uniform Act), and under Rules of Appellare (sic) Procedures (sic), Rule 21.3 'Grounds' which state:

(b) when the court has misdirected the jury about the law or has committed some other material error likely to injure the defendant's rights;

(e) when a material defense witness has been kept from court by force, threats, or fraud, or when evidence tending to establish the defendant's innocence has been intentionally destroyed or withheld, thus preventing its production at trial;

(f) also, when the jury has retired to deliberate, the jury has received other evidence that would probably influence their vote."

(Dkt. 2 at 4-5). The reference to the "Uniform Act" appears to be a reference taken from a document in the trial record entitled, "Certification Regarding Out-of-State Witness." CR at 43. The document further states the certification was made by the trial court, "...pursuant to the Uniform Act to Secure Attendance of Witnesses Without the State, which is Article 24.28 of the Texas Code of Criminal Procedure." *Id.* Rule 21.3 of the appellate rules cited by petitioner relates to motions for new trial.

Respondent framed petitioner's claims of due process violations as trial court error. (Dkt. 23 at 14). Respondent interprets petitioner's claims to be that the trial court judge erred in failing to secure an out-of-state witness, *i.e.*, co-defendant Mr. Moore, and in allowing the introduction of

---

[4] As argued by respondent, even if this evidence were part of a separate criminal count, it would be admissible as res gestae. (Dkt. 23 at 14).

petitioner's prior criminal record during the guilt-innocence phase of trial. (Dkt. 23 at 14-15). In his reply, petitioner states he never said the trial judge did anything. (Dkt. 27 at 3). Rather, petitioner reiterates that his claims relate to trial counsel's ineffective assistance. *Id.*

To the extent petitioner is re-urging his prior claims of ineffective assistance of trial counsel, those claims have been addressed and are without merit. To the extent petitioner attempts to present any claim of error on the part of the trial court judge which violated his due process rights with regard to securing the in court testimony and/or presentation of the affidavit of co-defendant Moore, such claim must fail. Contrary to petitioner's claim, the record shows the trial court granted petitioner's motion to secure a material and necessary out-of-state witness and issued a certification which stated it had, "made provisions for commanding the person of Jesse Moore Jr., to attend and testify at proceedings in this matter. CR at 42-43. However, as previously set out, petitioner testified at a pre-trial hearing that he did not want Mr. Moore brought back to Texas. RR 15. Petitioner now appears to argue his words could be and should be interpreted to mean that he did want Mr. Moore to testify. (Dkt. 27 at 4). However, read in the context of the pre-trial hearing where trial counsel moved for dismissal of the case with Mr. Moore's affidavit as the basis for dismissal, it is clear that petitioner was satisfied with trial counsel's representation on this issue and it is only after he was convicted that he urges this Court to interpret his responses differently. The Court declines to do so and his claim should be denied.

To the extent petitioner claims the trial court erred in allowing evidence of his prior criminal record into the trial, such claim has already been discussed in the context of prosecutorial misconduct. There is nothing to show petitioner's prior criminal history was admitted or even

alluded to during the trial. Any claim of trial court error or judicial misconduct in this regard should be denied.

### *Right to Fair Trial - Batson Error*

Petitioner contends that under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986) the state denies a black defendant equal protection of the law when it puts him on trial before a jury from which members of his race have been purposely excluded. (Dkt. 2 at 5). Petitioner does not argue that any African-American was purposefully struck from serving on the jury due to race, instead, petitioner cites to the record wherein a venire person, Mr. Lewis, was questioned by petitioner's trial counsel, after trial counsel noted there were no black individuals in the venire panel, regarding whether he could be a fair juror to petitioner, a black man. RR 78. Mr. Lewis replied, "That's just the way I was raised" and "I don't think he can get a fair trial in this county." *Id.* An off the record conference at the bench followed. RR 79. After the conference, petitioner's trial counsel stated:

> Mr. Lewis, thank you, very much. Is there anyone else here who feels that way? Ladies and gentlemen, this is not something that you have to be ashamed of. It's just not something you have to be embarrassed about. Things happen in each one of our lives.
>
> ...I want your common sense, but I want fairness in regard to this matter. Because, see, I have no idea based on looking at anyone in this room, because I don't spend much time over in this part of the state, about how people feel about black individuals or anyone else.
>
> All I'm asking you to do is, if you cannot be fair to my client or presume as he sits here today that he is not guilty, right now, I need to know that. Because if you can't presume at this point in time he's not guilty, you have, in essence, convicted him before any evidence has been put on. And if you do feel that way, if you don't want to speak up in front of everyone else - - like Mr. Lewis was very kind to do and probably because I asked the question once too often. If you would like to come to the bench now, I would prefer

that you do that at this stage before we go any further. Anyone else have a problem?

RR at 79-80. It appears M. Lewis expressed his opinion to the trial court that he could not be fair and impartial due to petitioner's race and that in his opinion, petitioner could not get a fair trial in the county. However, the record shows that no other venire person indicated they could not be fair and impartial. Mr. Lewis was not chosen to sit on petitioner's trial jury. RR 80, 110.

Petitioner has failed to present a valid *Batson* claim. Petitioner appears to argue there was a lack of African-American venire members which he feels entitles him to relief on his *Batson* claim. In a criminal case, potential jurors must represent a fair cross-section of the community; "the jury wheels, pools of names, panels, or venires from which the juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S. Ct. 692 (1975). However, defendants are not entitled to a jury of a specific composition. *Id.; United States v. Steen*, 55 F.3d 1022, 1030 (5th Cir. 1995). The Fifth Circuit has explained that a petitioner seeking to establish a cross-section claim must initially show 1) that the group allegedly excluded is distinctive, 2) that the group is not fairly and reasonably represented in venires in relation to its presence in the community, and that the under representation is caused by a systematic exclusion of the group in the selection process. *United States v. Olaniyi-Oke*, 199 F. 3d 767, 773 (5th Cir. 1999). Moreover, "[a] defendant cannot establish a prima facie violation by relying solely on the composition of the jury at his own trial." *Id.* Petitioner has not alleged any factual basis for his conclusion that the Carson County jury selection process systematically excludes African-Americans from the selection process. Accordingly, petitioner has failed to make a prima facie showing that the jury was unconstitutionally

empaneled. Petitioner is not entitled to relief on his claim and it should be denied.

## V.
## RECOMMENDATION

It is the RECOMMENDATION of the undersigned United States Magistrate Judge that the Petition for a Writ of Habeas Corpus filed by petitioner LARRY JAMES MCGEE be DENIED.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _3rd_ day of February 2017.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)©), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report

and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).